# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**DARLY L. MASEY,** individually and on
behalf of all others similarly situated**,**

      **Plaintiff,**

**v.**                                                      **CASE NO. 8:06-CV-1713-T-24EAJ**

**HUMANA, INC.**
and **CAREMARK RX, Inc.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on **Defendant Humana, Inc.'s Motion to Dismiss** (Dkt. 43), **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss** (Dkt. 44), **Defendant Caremark Rx, Inc.'s Motion to Dismiss** (Dkt. 57) and **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss** (Dkt. 60). These matters have been referred by the District Judge for a report and recommendation (Dkt. 73). Oral argument has been held.

## I.  Background Facts

Plaintiff, an enrollee in Defendant Humana Inc.'s ("Humana") Medicare Advantage health care plan, was treated for breast cancer in 2006 which required chemotherapy.[1] (Dkt. 35 at 1, ¶ 2) As part of her chemotherapy treatment, Plaintiff was injected with various cancer treating drugs. (Dkt. 35 at 2, ¶ 3) Plaintiff alleges that her chemotherapy drugs should have been covered under Medicare Part B, which covers 100 percent of the costs of injectable and infusible drugs that are not usually self-administered and that are furnished and administered as part of a physician service. (Id.)

---

[1] Although Plaintiff's amended complaint does not specify the dates she received chemotherapy, the parties agree that she was treated for cancer in 2006.

Plaintiff asserts that Humana incorrectly characterized her chemotherapy drugs as covered by Medicare Part D.  (Dkt. 35 at 2, ¶¶ 4-5)  Plaintiff alleges that once she surpassed the $2,250 prescription drug Medicare Part D coverage cap, she was required to pay 100 percent of the next $3,600 in drug charges, and 5 percent of any charges after paying the $3,600 amount.  (Id.)  Because Humana incorrectly designated the chemotherapy drugs as covered by Medicare Part D, Plaintiff contends that Humana improperly required her to pay for these drugs which cost her "thousands of dollars."  (Dkt. 35 at 3, ¶ 7; at 7, ¶ 25)

Furthermore, Plaintiff alleges that Humana has every incentive to classify chemotherapy drugs under Medicare Part D because it profits from this miscategorization.  (Dkt. 35 at 7, ¶ 28)  In particular, Plaintiff alleges that when Humana designates drugs as covered by Medicare Part D, Humana is reimbursed by the Government for nearly the full retail costs of medicines.  (Id.)   In contrast, Plaintiff alleges that Humana is reimbursed at a steep discount for drugs covered by Medicare Part B.  (Id.)

Under state law, Plaintiff alleges the following claims against Humana:  (1) breach of contract; (2) third party beneficiary breach of contract; (3) breach of fiduciary duty; and, (4) violations of Kentucky's consumer protection law.  (Dkt. 35 at 10-14, Counts I through IV)  Count V of Plaintiff's amended complaint alleges that Humana subcontracted out certain prescription drug and benefit management responsibilities to Caremark RX, Inc. ("Caremark").  (Dkt. 35 at 13, ¶ 71)  Plaintiff contends that Caremark breached its contract with Humana by classifying Medicare Part B drugs to enrollee's Medicare Part D coverage.  (Dkt. 35 at 13, ¶ 73)  Plaintiff asserts a third party beneficiary breach of contract claim against Caremark.  Jurisdiction is based on diversity of citizenship.  (Dkt. 35 at 4, ¶ 12)

Plaintiff brings this class action on behalf of herself and other similarly situated enrollees in Humana's plan.  Plaintiff seeks a jury trial and the following relief: (1) certification of the class; (2) an order enjoining Defendants from improperly charging Medicare Part D those medicine charges that are properly chargeable to Part B; (3) an order requiring Defendants to pay as damages those out-of-pocket medical charges that Plaintiff and the class have been required to pay because of Defendants' improper classification of chemotherapy drugs; (4) an order requiring disgorgement of all profits relating to improper classification of the chemotherapy drugs; and (5) an order requiring Defendants to pay for Plaintiff's reasonable attorneys' fees and costs, interest and other relief the Court deems fair and equitable.  (Dkt. 35 at 14)

Defendants move to dismiss the amended complaint on the grounds that Plaintiff's state law claims are preempted by federal law governing Medicare benefits and Plaintiff has failed to exhaust the administrative appeals required by the Medicare statute for benefit claims.    In reference to Plaintiff's breach of third party beneficiary contract claim against Caremark, Caremark first contends that neither Caremark nor one of Caremark's subsidiaries had a contract with Humana at the time Plaintiff was receiving her chemotherapy treatment. Second, Caremark asserts that, even if Caremark's contract had not terminated with Humana, Caremark had no responsibility  to determine how drugs are classified under Medicare.  Third, Caremark argues that this claim should be dismissed because, under the agreement between Caremark and Humana, there is no express benefit conveyed to Plaintiff.

A.    Statutory and Regulatory Framework

The federal government provides health care to elderly and disabled Americans under the Medicare program.  42 U.S.C. § 1395 et seq.  The Secretary of the Department of Health and Human

Services ("HHS" or "Secretary") oversees the program while the Centers for Medicare and Medicaid Services ("CMMS") administers the program.

Part A of the Medicare program provides insurance for the cost of hospital and related post-hospital services.  42 U.S.C. § 1395c.

Medicare Part B provides supplemental benefits for physician and out-patient services.  Id. at 1395k.  Part B pays for "medical and other health services," which is defined to include physician services, services incident to physician services, home dialysis supplies and equipment, institutional dialysis and supples and diagnostic laboratory tests.  Id. at 1395k, 1395x(s).  Part B also covers "hospital services (including drugs and  biologicals which are not usually self-administered by the patient)" to the extent the services are "incident to physicians' services rendered to outpatients and partial hospitalization services incident to such services."  Id. at 1395(x)s; 42 C.F.R § 410.10(b)-(c).   Agency regulations determine whether a service is incident to a physician's services or outpatient hospital services.  42 C.F.R. §§ 410.26-27.

Medicare Part B covers a limited number of prescription drugs, including injectable cancer treatment drugs, immunosuppressive drugs, certain oral anti-cancer drugs, and influenza and hepatitis vaccines.  See 68 Fed. Reg. 50,428, 50,429 (Aug. 20, 2003).  Through Medicare Part B, the government reimburses health care providers for up to 80 percent of the allowable costs of covered prescription drugs.  See In Re Pharm. Indus. Average Wholesale Price Litig., 460 F. Supp. 2d 277, 279 (D. Mass. 2006).

In 1997, Congress added the Medicare Part C, then known as the Medicare+Choice ("M+C") program to the Medicare plan.  The M+C program was intended to allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service

Medicare.  See Matthews v. Leavitt, 452 F.3d 145 n.1 (2nd Cir. 2006).  In 2003, the M+C program was replaced by the Medicare Advantage ("MA") program, which provides Part A and Part B benefits (and sometimes Part D benefits).  Id. at 1395w-22.  Under Medicare Part C, approved MA plans must provide members the same benefits and services available to participants living in the area served by Medicare Parts A and B.  42 U.S.C. § 1395w-22(a)(1).  Approved MA plans may supplement Medicare coverage with other benefits.  Id. at § 1395w-22(a)(3).

Part D of the Medicare program provides prescription drug coverage to qualifying enrollees. Id. at 1395w-101.  Under Part D, private prescription drug plans ("PDP") administer the drug benefit programs through contracts with the Secretary of HHS.  42 C.F.R.§ 423.272.  Under the standard drug benefit program, a PDP pays for an enrollee's prescription drug costs, after a deductible and 25 percent coinsurance, up to  $2,250 (the limit in 2006).  Id. at §§ 423.104(d)(l)-(3),(d)(3)(I).  After reaching the limit of $2,250, the enrollee is responsible for 100 percent of all drug costs reach the annual out-of-pocket threshhold of $3,600 (the limit for 2006).  Id.

## II.    Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff.  Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation omitted).  To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest.  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002).  Until the recent Supreme Court decision in  Bell Atlantic Corp. v. Twombly,  550 U.S. __, 127 S. Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could

prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  However, pursuant to Twombly which abrogated Conley, to survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1964-65.  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.   Discussion

Defendants contend that Plaintiff's state law claims are expressly preempted by federal regulation governing Medicare benefits and Plaintiff has failed to exhaust the administrative appeals required by the Medicare statute for benefit claims.  The threshold issue before the Court is whether section 1395w-26(b)(3) of the Medicare Modernization Act ("MMA") expressly preempts Plaintiff's state law claims.

### A.   MMA Preemption Provision

Defendants argue that with the passage of the MMA in 2003, Congress expanded the preemption of state law by declaring that state standards concerning benefits and other activities governed by Medicare standards are presumptively preempted.  (Dkt. 43 at 13)  The Medicare preemption clause provides that:

> The standards established under this part shall supersede any state law or regulation (other than State licensing law or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3)(2003).  Defendants argue that Plaintiff's claims are a "state law or

regulation . . . with respect to MA plans" and that the plain language of the statute preempts any contract, common law or statutory claims brought by Plaintiff, with the exception of state law regarding licensing and plan solvency.  (Dkt. 43 at 14)

Plaintiff contends that the amended complaint does not challenge "any state law or regulation . . . with respect to MA plans" because she relies on no state standard for MA plans in her complaint. Further, Plaintiff asserts that there are no federal standards regarding proper classification of drugs under Medicare Part D, and therefore, her state claims are not preempted.

In considering questions of federal preemption of state law, a court must be mindful that any understanding of the scope of a preemption statute rests primarily on a fair understanding of congressional purpose.  Medtronic, Inc., v Lohr, 518 U.S. 470, 485-86 (1996); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 515 (1992).  To discern the scope of a preemption provision, a court may look to the text, legislative history and purpose of the statute as a whole.  Medtronic, Inc., 518 U.S. at 485-86.

An examination of the purpose of the provision as well as its legislative and regulatory history is instructive.   The conference report discussed the Part D preemption provision as follows:

> Section 232.  Avoiding duplicative State regulation
>
> Present Law
>
> Medicare law currently preempts state law or regulation from applying to M+C plans to the extent  they are inconsistent with federal requirements imposed on M+C plans, and specifically, relating to benefit requirements, the inclusion or treatment of providers, and coverage determinations (including related appeals and grievance processes).  The standards established under Part D supersede state laws and regulations in the same manner those standards were superseded for Medicare Advantage plans. Standards specifically superseded include those relating to benefits (including requirements relating to cost-sharing and the structure of

7

> formularies), premiums, requirements relating to inclusion or treatment of providers, coverage determinations (including related grievance and appeals processes), and requirements relating to marketing materials and summaries and schedules of benefits for a plan.

H. Rep. 108-391 at 556 (Nov. 21, 2003).

Accordingly, the conference report underscores that the intent of Congress in enacting the Part D preemption provision was to avoid duplicative and inconsistent state regulations. The preemption rules under Medicare Part C (the Medicare Advantage program and the earlier M+C program) are a guide to determining whether state laws or regulations are preempted under the Medicare Part D prescription drug coverage program.[2]

In 2000, the Secretary concluded that after federal regulations for the M+C program were promulgated, the federal regulations dominated the field and left no room for state standard setting. 65 Fed. Reg. 40,170, 40,259 (June 29, 2000). The Secretary agreed with a federal ruling which held that a state could not require supplemental providers to offer additional benefits under the M+C program. Id. (citing Massachusetts Ass'n of HMOs v. Ruthardt, 194 F.3d 176, 183 (1st Cir. 1999). Pursuant to the Secretary's interpretation, once the federal regulations mandated what benefits are covered under the Medicare program, the state law and regulations requiring additional benefits are superseded if they are inconsistent with federal regulations. 65 Fed. Reg. at 40,259. Indeed, the Secretary stated that, even if the additional state mandated benefits are not federally funded, conflicting state laws or regulations are preempted by the federal regulations. Id.

In 1998, the Secretary explained that the same claim or circumstances that gives rise to a

---

[2] The Secretary clarified that Congress intended that the preemption rules should be applied consistently in Medicare Parts C and D. 70 Fed. Reg. 46,866, 46,903 (Jan. 28, 2005).

Medicare appeal may have elements that are subject to state claims that are not preempted.  63 Fed.

Reg. 34968, 35013 (June 26, 1998).  The Secretary's interpretation of the preemption clause for the

M+C program provided in relevant part:

> [T]he specific preemption [added by the BBA] does not preempt State remedies for issues other than coverage under the Medicare contract (i.e. tort claims or contract claims under State law are not preempted). The same claim or circumstance that gave rise to a Medicare appeal may have elements that are subject to State remedies that are not superseded. For example, an M+C organization's denial of care that a beneficiary believes to be covered care is subject to the Medicare appeals process, but under our interpretation of the scope of the specific preemption on coverage decisions, the matter may also be the subject of a tort case under State law if medical malpractice is alleged, or of a state contract law claim if an enrollee alleges that the M+C organization has obligated itself to provide a particular service under State law without regard to whether it is covered under its M+C contract.

Id. Accordingly, even assuming that a beneficiary's claim involves a coverage determination,

including the grievance and appeal process, the claim may give rise to a tort or contact case under

state law.  In such a situation, a state claim is not superseded.

In support of their position, Defendants focus on the Secretary's comments that Congress

specifically expanded the preemption clause when it passed the MAA in 2003.  (Dkt. 43 at 12-14)

Prior to the passage of the MMA in 2003, there was a presumption that a state law was not

preempted if it did not conflict with a Medicare requirement.  70 Fed. Reg. 4194, 4319 (January 28,

2005).  By enacting the MAA in 2003, Congress reversed the old presumption that a state law was

not preempted if it did not conflict with a Medicare managed care requirement.  Id.

Defendants' argument  ignores the Secretary's narrow interpretation of the preemption

clause. One large insurer objected to the Secretary's narrow interpretation of the statutory

preemption authority and requested that the agency make it clear that all state laws and regulations

(with the exception of licensing and solvency laws) are preempted with respect to MA and Part D plans.  70 Fed. Reg. at 4319.  The Secretary replied that neither the principles of federalism nor the statute justified such a broad preemption interpretation.  Id. at 4320.  The Secretary emphasized that the preemption rule "operates only when CMS actually creates standards in the area regulated.  To the extent we do not create any standards whatsoever in a particular area, we do not believe preemption would be warranted."  Id.  Under the Secretary's interpretation of the preemption clause as it related to grievances and appeals, "an enrollee will still have state remedies available in cases in which the legal issue before the court is independent of an issue related to the MA's status as a stand alone PDP or an MA-PD plan."  Id. at 4362.

Similarly, the Secretary rejected a broad interpretation of the preemption provision as it relates to state consumer protection laws and agreed that "consumer protection laws should be left to States."  65 Fed. Reg. 40,170, 40,258 (June 29, 2000).   The Secretary stated that state consumer protection standards were not subject to preemption as long as the state law did not conflict with a M+C program requirement.  Id.

In support of their position, Defendants rely on Uhm v. Humana, Inc., No. C06-01850RSM, 2006 U.S. Dist. LEXIS 41185 (W.D. Wash. June 5, 2006).[3]  (Dkt. 43 at 10, 14).  Based upon the

---

[3]  In Uhm, plaintiffs alleged claims of breach of contract, violation of state consumer protection statutes, unjust enrichment and fraud in the inducement against Humana for the company's failure to provide plaintiffs with order forms and instructions on how to obtain prescription drugs.  Uhm, 2006 U.S. Dist. LEXIS 41185, at * 4.  As a result of Humana's failure to provide forms and instructions, plaintiffs were forced to purchase their prescription drugs out-of-pocket at retail prices.  Id. at * 4.  The court held that plaintiffs' claims fell within the ambit of the "coverage determination" appeal procedures and the grievance procedures as outlined in the federal regulations.  Id. at *8-9.  As such, the court concluded that the Medicare Part D regulations superseded plaintiffs' state claims.  Id.  The court noted that the purpose and legislative history of the MMA supported defendant's preemption argument because Congress intended the Part D preemption provision to be broad in scope.  Id. at * 11-13.

purpose and legislative history of the Part D preemption provision as well as the subsequent regulatory history, the court disagrees with the overly broad interpretation of the scope of the provision articulated in Uhm.[4]   Under Defendants' sweeping view of the statute, Congress precluded state courts from affording plaintiffs any protection from harm caused by MA plans.  It would take language much plainer than the text of § 1395w-26(b)(3) to convince the court that Congress intended to grant MA plans such a broad immunity from state claims.

Here, Plaintiff is not relying on any state law or regulation relating to MA plans.  Rather, Plaintiff is asserting state common law or statutory claims.  Under these circumstances, there is no preemption under the MMA.  If Plaintiff relied on a Florida law or regulation requiring MA plans to provide 100 percent reimbursement of all prescription drug benefits, such a regulation would collide with Medicare laws.   No such state law or regulation relating to MA plans is at issue in this case.   Therefore, the MMA preemption provision does not apply to Plaintiff's state claims.

In sum, Defendants' interpretation of section 1395w-26(b)(3) is overbroad.   Because Plaintiff's claims are not expressly preempted, the next issue is whether the doctrine of exhaustion of administrative remedies is applicable to Plaintiff's claims.

B.   Exhaustion of Administrative Remedies: The Ringer Inquiry

Alternatively, Defendants contend that Plaintiff has failed to exhaust administrative

---

[4] Defendants also cite First Med. Health Plan, Inc. v. Vega, 406 F. Supp. 2d 150, 154 (D. P.R. 2005).   In Vega, the district court held that the Part D preemption provision prevented the agency from enforcing a territorial law to bar plaintiff from joining the territorial prescription drug program.  Id. at 154.   However, the Vega decision does not support Defendants' preemption argument because the First Circuit vacated the district court's decision.   First Med. Health Plan, Inc. v. Vega, 479 F.3d 46, 53 (1st Cir. 2007).   The circuit court held that the territorial program in dispute was not a Medicare program, but a Medicaid program and was outside the scope of the Medicare Part D preemption provision.  Id. at 52.   Under Medicaid law, defendant was free to enforce territorial law to exclude plaintiff from participating in the program.  Id. at 53.

remedies.  Deciding whether an individual is entitled to benefits and the amount of benefits are issues entrusted to the Secretary in accordance with established regulations.  42 U.S.C. § 1395ff (a). Judicial review of a claim for benefits is available only after the Secretary has rendered a final decision on the claim and only in the manner provided for claims under the Social Security Act (the "Act").  Heckler v. Ringer, 466 U.S. 602, 605 (1984);[5] 42 U.S.C. §§ 405(g), (h), 1395ff(b)(1). The relevant provisions of  the Act, read together, provide that a final decision by the Secretary on a claim "arising under" Medicare may not be reviewed by any person, agency or tribunal except in an action brought in federal district court after exhausting administrative remedies as described above.  42 U.S.C. §§ 405(g) and (h), 1395ii; see 42 U.S.C. §§ 1395ff(b)(1), 1395mm(c)(5)(B).

Ringer referred to two tests in concluding that the plaintiffs' claims arose under the Medicare Act:  (1) both the standing and the substantive basis for the presentation of the claims was the Medicare Act; or (2) the claims were "inextricably intertwined" with a claim for Medicare benefits. Ringer, 466 U.S. at 614-15.[6]  The Court recognized, however, that a claim that is "wholly collateral"

---

[5]  The plaintiffs in Ringer challenged the Secretary's policy not to pay for a special type of surgery to relieve respiratory distress.  Id. at 604-07.  One commentator has suggested that Ringer did not adopt the "inextricably intertwined" test for determining whether a claim arises under Medicare.  See Stephen M. Elwell, Preemption of Contract Claims by the Medicare Act: An Analysis of the Recent Holding in Lifecare Hospitals v. Ochsner Health Plan, 24 Rev. Litig. 125, 143 (2005).  However, the Eleventh Circuit has recognized this test in applying Ringer.  American Academy of Dermatology v. HHS, 118 F.3d 1495, 1499 (11th Cir. 1997); see also RenCare, LTD v. Humana Health Plan of Texas, Inc., 395 F. 3d 555, 559 (5th Cir. 2004); Kaiser v. Blue Cross of California, 347 F.3d 1107, 1112-13 (9th Cir. 2003); Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000, 1004 (8th Cir. 1998); Manakee Professional Medical Transfer Serv., Inc. v. Shalala, 71 F.3d 574, 579 (6th Cir. 1995).

[6]  Some courts have conflated the preemption doctrine and the exhaustion of administrative remedies requirement under the Medicare Act.  See e.g. Kennedy v. Health Options, Inc., 329 F. Supp. 2d 1314, 1316-18 (S.D. Fla. 2004).  However, they are distinct doctrines.  See Uhm, 2006 U.S. Dist. LEXIS 41185, at *6 n 2.

to a claim for benefits under the Act is not subject to the administrative process; the Court also suggested exhaustion would be excused if a claimant made a colorable showing that an erroneous denial of benefits would injure him or her in a way that could not be remedied by the later payment of benefits.  Id. at 618.

Post-Ringer, the Eleventh Circuit has held that the broad construction of the "arising under" language of subsection 405(h) prevents "beneficiaries from circumventing the administrative process by creatively styling their benefits claims as collateral constitutional or statutory challenges not 'arising under' Medicare."  Body v. Blue Cross and Blue Shield of Alabama, Inc., 156 F.3d 1098, 1104 (11th Cir. 1998).  Moreover, the jurisdictional limitations contained in the Medicare Act demonstrate that subsection 405(h) simply seeks "to preserve the integrity of the administrative process Congress designed to deal with challenges to amounts determination by dissatisfied beneficiaries, not to serve as a complete preclusion of all claims related to benefit determinations in general."  Id. at 1109.   In scrutinizing a plaintiff's claim, a court should determine whether the plaintiff is simply seeking benefits, a claim cognizable within the administrative scheme designed by Congress, or whether the plaintiff is bringing a claim for which administrative review is unavailable.  Id.  Accordingly, "the Supreme Court has not sought to extend the reach of subsection 405(h) to bar claims that, although they may implicate benefit determinations, are certainly not veiled claims for benefits by a disgruntled beneficiary that could have, and should have, been pursued administratively in the first instance."  Id.

C.    Whether Plaintiff's  Claims Arise Under the Medicare Act

Applying Ringer to the present case, Plaintiff's claims are based upon state common law and state statutory causes of action.  The standing and substantive basis for her claims are not the

Medicare Act. Thus, Plaintiff must exhaust her administrative remedies and appeal the resulting decision in federal court only if Plaintiff's claims are inextricably intertwined with a claim for benefits.

1.   Plaintiff's Contract Claims Against Humana

In Count I, Plaintiff alleges that Humana breached the Medicare Advantage contract with Plaintiff when it improperly classified the chemotherapy drugs as covered by Medicare Part D. (Dkt. 35 at 10)  Count II of the amended complaint asserts that Plaintiff is a third party beneficiary of the Medicare Advantage contract between Humana and the federal government.  (Dkt. 35 at 11) When Humana incorrectly categorized her cancer treatment drugs under Medicare Part D, Plaintiff alleges that Humana breached the contract.

Plaintiff seeks an order enjoining Defendants from improperly charging Medicare Part D for prescription drug charges that should be properly charged to Medicare Part B.  In addition, Plaintiff requests an order requiring Defendants to pay as damages the out-of-pocket medical charges that Plaintiff was required to pay because of Humana's alleged improper classification.  (Dkt. 35 at 10-11, 14)

Counts I and II  are essentially claims for reimbursement of benefits amounts under the Medicare Act.   Furthermore, the injunctive relief sought by Plaintiff is indistinguishable from the request for reimbursement of payments for the chemotherapy drugs.  See Am. Acad. of Dermatology, 118 F.3d at 1499 (plaintiff's claim for injunctive relief to refrain agency from implementing policy against reimbursement for medical procedure  was inextricably intertwined with claim for benefits).   Accordingly, because Plaintiff's contract claims are inextricably intertwined with a claim of benefits under the Medicare Act, the requirements of presentment and

14

exhaustion must be met prior to the exercise of judicial review.

2.        Plaintiff's Breach of Fiduciary Duty Claim Against Humana

Count III states a breach of fiduciary duty claim against Humana.  (Dkt. 35 at 12)  Plaintiff alleges that Humana had a fiduciary duty to administer the Medicare Advantage program honestly and accurately.  (Id.)  By incorrectly classifying  chemotherapy drugs under Part D program, Plaintiff asserts that Humana breached its fiduciary duty to her.  Plaintiff contends that Humana was enriched by its decision to categorize the chemotherapy drugs under Part D because of the different reimbursement rates under Parts B and D.  Plaintiff seeks out-of-pocket medical expenses paid for her chemotherapy drugs and disgorgement of all profits Humana enjoyed as a result of the misclassification of the chemotherapy drugs.  (Dkt. 35 at 14)

A breach of a fiduciary duty is a tort and the beneficiary can obtain redress either at law or in equity for the harm done.   King Mt. Condo. Ass'n v. Gundlach, 425 So. 2d 569, 571 (Fla. 4th Dist. Ct. App. 1983).  Alternatively, the beneficiary of the fiduciary duty is entitled to obtain the benefits derived by the fiduciary through the breach of duty.  Id.  A breach of fiduciary duty will support an award of punitive damages.  Laney v. Equity Life Insur. Co., 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003).  An insured's claim for disgorgement of profits stemming from an insurance company's breach of fiduciary duty is viewed as a request for punitive damages.  Carnegie v. Mut. Sav. Life Ins. Co., No. CV-99-S-3292-NE, 2002 U.S. LEXIS 21396, at *45-56 (N.D. Ala. Nov. 1, 2002).

Thus, Plaintiff's claim for breach of fiduciary duty is not inextricably intertwined with her claim for reimbursement of benefits.  Other courts have held that a beneficiary's claim for breach of fiduciary duty against a Medicare insurer is not a claim arising under the Medicare Act.  See e.g.,

Hofler v. Aetna, 269 F.3d 764, 770 (9th Cir. 2002), overruled in part on other grounds, Martin v. Franklin Capital Corp., 546 U.S. 132 (2005)(Congress did not intend to abolish all state remedies which might exist against a private Medicare provider for torts committed during its administration of Medicare benefits); Kennedy, 329 F. Supp. 2d at 1317 (claim of breach of fiduciary duty did not arise under Medicare Act); see also Ardary v. Aetna Health Plans of California, Inc., 98 F.3d 496, 501 (9th Cir. 1996)(without evidence of Congressional intent to preclude state claims, the "arising under" language should not be interpreted to mean that Medicare providers cannot be held responsible for tortious acts committed in the context of the denial of Medicare benefits).

3.   Plaintiff's Statutory Consumer Protection Claim Against Humana

In Count V, Plaintiff asserts that Defendant Humana violated the Kentucky's Consumer Protection Act ("KCPA") by improperly classifying chemotherapy drugs under Medicare Part D.

The KCPA provides that unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful.  Ky. Rev. Stat. § 367.170.  If a plaintiff prevails on a KCPA claim and proves defendant's actions are malicious, oppressive or fraudulent, plaintiff may be eligible to recover punitive damages.  Hollon v. Consumer Prot. Recovery Ctr., 417 F. Supp. 2d 849, 852 (E.D. Ky. 2006).  The KCPA authorizes the award of attorneys fees and costs.  Ky Rev. Stat. § 367.220(3).  Assuming the Kentucky consumer protection statute applies to Plaintiff's claim, Plaintiff may be eligible to recover punitive damages, attorneys' fees and costs.  As such, this claim is not a claim for reimbursement of medical benefits and is not inextricably intertwined with the Medicare Act.  See e.g., Hofler, 296 F.3d at 768 (not clear and manifest intent by Congress to preempt entire field of state regulations regarding Medicare plans); Commonwealth of Pennsylvania v. Tap Pharm. Prods., 415 F. Supp. 2d 516, 525 n.6 (E.D. Pa. 2005)(Medicare Act does not preempt

state's ability to regulate fraudulent billing practices under state consumer protection laws); <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 263 F. Supp. 2d 172, 188 (D. Mass. 2003)(same). Thus, Count IV is not inextricably intertwined with Plaintiff's claim for reimbursement of Medicare benefits.

D.     <u>Exhaustion of Administrative Remedies</u>

Having concluded that Plaintiff's two contract claims are subject to the administrative exhaustion requirement, the next issue is whether Plaintiff has complied.

The Medicare statute demands the channeling of claims for benefits through the administrative process.  <u>Lifestar Ambulance Serv. v. United States</u>, 365 F.3d 1293, 1296 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 543 U.S. 1050 (2005)(quoting <u>Shalala v. Illinois Council on Long Term Care, Inc.</u>, 529 U.S. 1, 13 (2000).  Exhaustion of Medicare claims contains two components.  First, there is a nonwaivable requirement that a claim for benefits be presented to the agency.  <u>Ringer</u>, 466 U.S. at 617; <u>Mathews v. Eldridge</u>, 424 U.S. 319, 328-29 (1976)(initial claim presentment is an essential and distinct prerequisite for jurisdiction and cannot be waived by the Secretary).  Second, a claimant must fully pursue the prescribed administrative remedies prescribed by the Medicare system, although this requirement may be waived.  <u>Ringer</u>, 466 U.S. at 617.  The MMA contains procedures for both presenting claims to the sponsor of the Medicare Part D drug plan and pursuing those claims through the administrative process.  42 U.S.C. §§ 1395w-104(g)-(h).

Plaintiff contends she complied with the presentment and exhaustion requirements when she made numerous calls to Humana's help line.[7]  (Dkt. 35 at 8 ¶ 31)  Specifically, Plaintiff alleges that

---

[7]  Although there is no jurisdictional requirement that a plaintiff plead exhaustion of administrative remedies, <u>see</u> <u>Jones v. Bock</u>, __ U.S. __, 127 S. Ct. 910, 919 (2007)(failure to exhaust is an affirmative defense), this issue is appropriately raised in the instant motions.

she attempted to avail herself of the available administrative remedies by making "perhaps as many as a dozen" telephone calls to Humana's help line, but "[h]er experience was uniformly frustrating: she received inconsistent answers when she received any response at all." (Id.) Plaintiff also alleges that seeking any administrative relief would have been futile.  (Dkt. 35 at 8 ¶ 32)

Plaintiff's failure to establish that she presented any concrete appeals and pursued those appeals with Humana prevents this court from exercising jurisdiction over her contract claims at this time.  Plaintiff's futility argument is insufficient to skirt the mandate of exhaustion because the presentment argument may not be waived.  To avail herself of the futility doctrine for purposes of excusing further compliance with the administrative process, Plaintiff must show that the issues raised are "wholly collateral" and any alleged injury could not be remedied by the retroactive payment of benefits after exhaustion of administrative remedies.  Ringer, 466 U.S. at 618.   As discussed above, because Plaintiff's contract claims are inextricably intertwined with a claim for Medicare benefits; these claims are not independent or wholly collateral.  Thus, Plaintiff is not excused from complying with the administrative appeal process as it relates to her contract claims.[8]

E.     Plaintiff's Claim Against Caremark

In Count V, Plaintiff alleges that Caremark provided pharmacy benefit management services to Humana. (Dkt. 35 at 14, ¶ 71)  Plaintiff further alleges that Caremark  breached its contract with

---

[8] Plaintiff also urges the application of an exception to the exhaustion requirement because her claims present purely legal issues involving contract interpretation (Dkt. 44 at 20, n. 76).  Of the cases Plaintiff cites to support this argument, only one, Illinois Council, 529 U.S. at 12-13, is binding on this court.  There, the Supreme Court observed that although courts have carved out exceptions to the doctrines of "ripeness" and "exhaustion" in certain circumstances inapplicable here, § 405(h) prevents the application of these exceptions in the Medicare context and "demands the 'channeling' of virtually all legal attacks through the agency."  Id. at 13.  Plaintiff's argument is unpersuasive.

18

Humana by classifying the chemotherapy drugs under Medicare Part D.  (Dkt. 35 at 14, ¶¶ 72-73)
Plaintiff asserts a third party beneficiary breach of contract claim against Caremark.  (Dkt. 35 at 14,
¶ 70)

Apart from the preemption and exhaustion arguments previously addressed, Caremark
contends that Plaintiff's claim should be dismissed because neither Caremark or one of Caremark's
subsidiaries had a contract with Humana at the time Plaintiff was receiving her chemotherapy
treatment. (Dkt. 57 at 8)   The parties agree that PCS Health Systems, Inc. ("PCS"), a subsidiary of
Caremark, provided pharmacy benefit management services to Humana in connection with
Humana's drug prescription program.  (Dkt. 84 at 1)   Also, the parties stipulate that Humana
terminated its agreement with PCS on September 14, 2005 and Caremark ceased providing
pharmacy benefit management services to Humana as of that date.   (Dkt. 84 at 2)   During the
relevant time period, Caremark admits that a subsidiary of Caremark agreed to provide "specialty"
services to Humana, but did not obligate Caremark to provide pharmacy benefit management
services.  (Dkt. 57 at 3, n.3)

In response, Plaintiff argues that her claim is based on "the existence of some form of
contractual relationship between Caremark and Humana."  (Dkt. 60 at 2)   Plaintiff asserts that
Caremark was one of Humana's subcontractors during 2006, even if it was not Humana's
pharmaceutical benefits manager.  (Id.)

If there is no contract on which to base a third party beneficiary claim, plaintiff's claim must
be dismissed.  Terry v. Northrup Worldwide Aircraft Serv., Inc., 786 F.2d 1558, 1561 (11th Cir.
1986).  To survive a motion to dismiss, Plaintiff's complaint must include enough facts to state a
claim to relief that is plausible on its face.  Twombly, 127 S. Ct. at 1964-1965.   Plaintiff's bare

assertion that some form of contractual relationship existed between Caremark and Humana does not satisfy her obligation to provide sufficient grounds for relief.   Accordingly, the court recommends that Caremark's motion to dismiss be granted with leave to amend within twenty (20) days after the court's dismissal of Count V of the amended complaint.

## CONCLUSION

Defendants have not shown that Plaintiff's state law claims are expressly preempted by the Medicare Act.  However, Plaintiff's contract claims arise under the Medicare Act because these claims are inextricably intertwined with a claim for Medicare benefits.  Plaintiff is required to exhaust her administrative remedies before seeking judicial review of her contact claims.  Therefore, Counts I and II of Plaintiff's amended complaint should be dismissed.

Plaintiff's tort and consumer protection claims do not arise under the Medicare Act and Plaintiff is not required to exhaust the administrative remedies under the Medicare Act before seeking judicial review of these claims.  Defendant Humana's motion to dismiss should be denied as to Counts III and IV.

Because Plaintiff failed to demonstrate that a contract for pharmacy benefit management services existed between Caremark and Humana during the relevant time period, dismissal of Count V of the amended complaint is appropriate with leave to refile.

It is therefore **RECOMMENDED** that:

(1)     **Defendant Humana, Inc.'s Motion to Dismiss**  (Dkt. 43) be **GRANTED** as to Counts I and II in part and **DENIED** as to Counts III and IV;

(2)     **Defendant Caremark Rx, Inc.'s Motion to Dismiss** (Dkt. 57) be **GRANTED**; however, the court recommends that Plaintiff be permitted to file an amended

complaint within twenty (20) days after the court's dismissal of Count V of the amended complaint.

ELIZABETH A JENKINS
United States Magistrate Judge

Dated: August 16, 2007

Case No. 8:06-CV-1713-T-24EAJ

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636 (b)(1).